*EXHIBIT*

*A*

Are you saying you don't think I don't even deserve a 3% raise?

-----Original Message-----
From: Daniel Straus
Sent: Friday, February 03, 2006 1:37 PM
To: Kim Velez
Subject: RE:

I was thinking about this exchange of emails you and I had earlier in the week. I have always been fair to you on compensation and have tried to satisfy you. Although I want to always be fair to you, I confess to being uncomfortable under the present circumstances with the increase to 85,000 that I signed off on last Fri. That is why I sent my email. Your email back to me was an admission that the increase was not justified and that you wanted to justify it. What I should have said is that I don't feel the 85,000 is justified and that I would prefer to have left your salary at the rate it was at which is a full salary for your current position and responsibilities. I would then look to consider a bonus in the future based on how things develop. I know that you have always tried to be fair with me as well so think about what I am saying. Let me know how to resolve this.

-----Original Message-----
From: Kim Velez
Sent: Tuesday, January 31, 2006 1:12 PM
To: Daniel Straus
Subject: RE:

I agree with everything you say except implying that I am underloaded. If that was the case I wouldn't be working until 7 - 8 many nights, bringing work home and coming in on weekends. My desire to take on more responsibility wasn't because I am underloaded.. It was to justify a potential increase. I am happy with my raise and don't expect more.

-----Original Message-----
From: Daniel Straus
Sent: Tuesday, January 31, 2006 12:45 PM
To: Kim Velez
Subject:

One thing I was thinking about and I wanted you to be thinking the same way. When I gave you the increase in pay to 85k last Friday you implied how you should have asked for more and that maybe then I should consider a bonus for you. Actually, I view the 85k as a full salary for your position and responsibilities. I was happy to say yes to you. But you should not in any way interpret that as having left money on the table. If you had requested more I would not have gone along. The 7k increase is. A 9% increase which is three times the guideline. Also based on what you have told me that you have been doing (unless you have understated what you are doing) it sounds like you are far from being overloaded and in fact somewhat underloaded. I am ok with this because we have some growing into that needs to go on so that everyone gets appropriately a fulltime job. I know this takes time. But I am not of the mindset that in addition to your increase I am now thinking about a bonus as well. Further, I expect that over the next few months things will get busier and you will have more to do. I also don't anticipate a bonus for that. If this is for some reason not your understanding let me know and we can discuss. I set this in an email just so we are clear. Please do not write long emails back. Come speak with me if you need to. Thanks.

Sent from my GoodLink Wireless Handheld (www.good.com)

| | |
|---|---|
| From: | Kim Velez |
| Sent: | Friday, November 15, 2002 10:48 AM |
| To: | Jennifer Tufaro |

I'm so excited. Its Daniel's birthday and this afternoon I get to give him his birthday present. It's a blowjob and he knows its coming. I'm acting like I'm really cool about it but I really really finally want to do it.

# Daniel Straus

From: Kim Velez
Sent: Tuesday, December 20, 2005 8:04 PM
To: Daniel Straus
Subject: RE:

Ditto

-----Original Message-----
From: Daniel Straus
Sent: Tuesday, December 20, 2005 8:03 PM
To: Kim Velez
Subject: RE:

I hope you know how happy I am that I included you in this deal because you are special to me.

-----Original Message-----
From:       Kim Velez
Sent: Tue Dec 20 19:58:25 2005
To:     Daniel Straus
Subject:

I hope you know that nobody is more grateful than me about any money that is made... I'm just afraid to get to excited until its all 110% sure.

Kim Velez
Finance Manager
CareOne / Straus Capital Group
**new address effective 11.28.2005**
173 Bridge Plaza North
Fort Lee, New Jersey 07024
201-346-3003
Fax: 201-346-3001

1

**EXHIBIT**

**B**



June 14, 2022

To whom this may concern:

I write to alert you of some troubling evidence regarding the licensed administrator Emily Vasquez at CareOne in Newton. Ms. Vasquez is the subject of an ongoing investigation regarding multiple offenses. The offenses are a direct violation of Massachusetts law as well as the Massachusetts long-term care regulations.

Please understand notification was already sent to Mr. Stephen Davis, MA DPH, Ms. Beth Scheffler, MA DPH well as three other employees within the department several weeks ago. I am extremely concerned at the lack of investigative work by the member of MA DPH therefore I have decided the appropriate thing is to expand the reporting to those carbon copied on this letter. As you can see from the list of agencies on this letter as well as the individuals these are serious allegations.

For those of you who are not aware of the allegations Ms. Vasquez was pulled over for suspicion of OUI and when pulled over the arresting officer identified Ms. Vasquez had narcotics in her possession with a name and date of birth of a former patient at CareOne in Newton. Without getting into all of the specifics the narcotics that were discovered in Ms. Vasquez's vehicle were on the narcotic destruction log as having been destroyed by Ms. Vasquez, the current director of nursing services and the former assistant director of nursing services. The quantity of pills in question that were logged as having been destroyed far exceeded what was in Ms. Vasquez's vehicle but the concern is the pills come individually wrapped in a bubble pack card so obviously the medications in question were not destroyed yet the log indicates they had been.

I want to make it clear I am employed by CareOne in Newton and I am aware of many criminal and regulator offenses by Ms. Vasquez. Ms. Vasquez has made it well known if you cross her, she will not only have you fired but she will ruin your career and you will be unable to work in the profession. These threats must be taken seriously because Ms. Vasquez has made it very clear to many of us that she has a direct connection to the owner and she has had several people fired. Ms. Vasquez is a bully and she uses her power to threaten people on an almost daily basis. I am not sure what the DNS or ADNs told you but Ms. Vasquez has stolen thousands of narcotics from CareOne in Newton during her time there. Ms. Vasquez is known to use narcotics on a daily basis and her husband sells them. Massachusetts is in a crisis situation with the opioid problem in this state and Ms. Vasquez is using her position of power to add to the problem.

Ms. Vasquez uses the process of narcotic destruction to fuel her addiction and supply her husband with inventory to sell. Ms. Vasquez had her drivers license taken away, let her administrators license lapse and yet continued to operate as the licensed administrator at CareOne in Newton knowing she did not have a valid license. Did Ms. Vasquez alert the board of nursing home administrators know she let her license lapse and received a OUI charge? Did Ms. Vasquez alert the MA DPH survey team that she was practicing without a license? Was the survey team aware of the lack of checks and balance to the narcotic destruction process at CareOne in Newton?

In addition to the above Ms. Vasquez has committed Medicare and Medicaid fraud because she has an obsession with performing financially for the owner of the company. Ms. Vasquez is in a relationship

with the owner and he protects her. She should not be operating or even allowed to work in this setting. She is abusing her power for personal gain. There is much more criminal activity Ms. Vasquez has been involved in and it needs to be investigated. Ms. Vasquez needs to be removed from the center so a true investigation can be conducted to produce real results. There are multiple staff in the center who are aware of this criminal activity but they are scared. We have text messages, screen shots, phone recordings, pictures that are very damming. There is enough evidence that has been collected by the police and DEA to take Ms. Vasquez's license and to remove her from this setting because she has abused her power and put staff and patients at risk. All eyes are on all of you to do the right thing. Failure to do so will result in a social media blast with the evidence that has been collected on our end. Some of our evidence might not hold up ion court based on legalities and the recordings but it will certainly make some noise in the court of public opinion. Failure to take serious swift action against Ms. Vasquez will set prescient for future individuals who abuse their power.

The evidence we have will send shockwaves across the state if it is released. It will only be released if swift and serious action. Keep in mind there is also confirmation that our letter was received by multiple individuals at MADPH because we have an inside mole confirming this.

Sincerely,

Newton Employees


Cc Board of licensed administrators
Cc Massachusetts Senior Care
Cc Massachusetts Attorney General's office
Cc US Attorney Massachusetts
Cc Newton Police Department
Cc Swampscott Police Department
Cc executive Office of Elder Affairs
Cc Representative Jake Auchincloss
Cc Elizabeth Warren
Cc Edward Markey
Cc Middlesex District Attorney
Cc Massachusetts State Police
Cc Center for Medicare and Medicaid Services
Cc United States Drug Enforcement

Failure to act will result in evidence being sent to all media outlets including social medica and info will be sent to the family members of current patients at CareOne in Newton. I trust necessary and swift action will be taken. Ms. Vasquez has been allowed to remain in the building and access more narcotics which is not a good look.

*EXHIBIT*

*C*

4:17

< 265    D    📹

Daddy ›



Jan 29, 2024 at 11:07 AM

4 tickets for tomorrow night?

Jan 30, 2024 at 12:01 PM

We have Knicks tickets for Feb 6 and 8 to give away. Can we use them for good people?

I have to believe our business dev marketing in nj cld use these

Daddy I'm taking Feb 8 remember??? And I will take the 6th and work on that now

8th is baker and docs

Jan 30, 2024 at 1:45 PM

Just got major doc for 6th possibly

Great

Call me please

iMessage 🎤

9:03

‹ All Inboxes    **Knicks Spreadsheet**    ∧  ∨

2 Messages

Found in Lizzybee2910@gmail.com All Mail Mailbox   🗂

**DS**  **Daniel Straus**                    2/6/24
To: Lizzy, Emily ›

Available games. Let me know if we have good use for any of them
Get Outlook for iOS

---

**From:** Joseph Straus <jstraus@strausgroup.com>
**Sent:** Tuesday, February 6, 2024 3:34 PM
**To:** Daniel Straus <dstraus@care-one.com>
**Subject:** FW: Knicks Spreadsheet

See below for games that can be given out and attached for the entire file.



--

Joseph S. Straus
The Straus Group
(201) 242-4021

https://strausgroup.com

---

**From:** Katherine Havlicek <khavlicek@care-one.com>
**Date:** Monday, February 5, 2024 at 3:36 PM
**To:** Emily Vazquez <EVazquez@care-one.com>,
Joseph Straus <jstraus@strausgroup.com>

         

4:17



Daddy

interesting... I would like to discuss with you when you have time

Jan 25, 2024 at 7:50 PM

How is the game

Good he has two internists that are good

Jan 25, 2024 at 9:54 PM

Great

Jan 27, 2024 at 5:52 PM



N.J. continues crackdown on nursing homes, 2 more cited for poor care and 'massive fraud'

nj.com

Jan 28, 2024 at 7:35 PM

There's a Knicks game on Tuesday night. Do you have any drs or business people you want to ask to go

Jan 28, 2024 at 9:14 PM

iMessage

**Knicks 2023-2024 Tickets**
Location: Section 6A, Row 2, Seats 1-4

Legend:
- Expected Premium Game/Good Opponent
- Friday Night, Saturday or Yuntif or Jewish Holiday
- Reserved for Daniel Joseph
- Offered to Emily Vazquez to give away
- Sold on Stubhub or other Marketplace

| | |
|---|---|
| Ave. Season Ticket Price (Seats 1-2): $ | 1,020.25 |
| Total Package Price/Seat (Seats 1-2): $ | 44,891.00 |
| Ave. Season Ticket Price (Seats 3-4): $ | 930.80 |
| Total Package Price/Seat (Seats 3-4): $ | 40,955.00 |

| Date | Day | Time | Game Type | Opponent | Company | # of Tickets | Attendee | Guest (Company) | Notes | Ave. Face Value Per Ticket: Seats |
|---|---|---|---|---|---|---|---|---|---|---|
| 9-Oct | Monday | 7:30pm | Preseason | Boston Celtics | CareOne | 2 | Gabriella Puglis + Steven Matthew Sole | Saint Clare's Denville Case Management Dept | 2 tickets were given to Brahiam Melo from Knickerbocker Country Club | $ 634.13 |
| 14-Oct | Saturday | 7:30pm | Preseason | Minnesota Timberwolves | CareOne | 4 | Jela Maretic (2 tix) + Sheryl Tolentino (2 tix) | Case Managers at Gratitude Home Care NJ | | $ 634.13 |
| 18-Oct | Wednesday | 7:30pm | Preseason | Washington Wizards | CareOne | 4 | Steve Lampert (2 tix) & Holly Alarcon (2 tix) | Hamilton Grove Health | | $ 634.13 |
| 25-Oct | Wednesday | 7:00pm | Regular Season | Boston Celtics | | 4 | Daniel, Joseph, David & Michael Greenspan | | | $ 1,414.32 |
| 1-Nov | Wednesday | 7:30pm | Regular Season | Cleveland Cavaliers | CareOne | 2 | Brandon Howard (2 tix) | | ONLY 2 TICKETS AVAILABLE. 2 SOLD TO DOTT | $ 975.50 |
| 6-Nov | Monday | 7:30pm | Regular Season | LA Clippers | CareOne | 4 | Kimberly Paton, ESQ (4 tix) | The Paton Law Firm | | $ 780.50 |
| 8-Nov | Wednesday | 7:30pm | Regular Season | San Antonio Spurs | | 4 | Hold for DES & Joseph | | | $ 1,131.58 |
| 12-Nov | Sunday | 12:00pm | Regular Season | Charlotte Hornets | | 4 | Hold for DES & Joseph | | | $ 780.50 |
| 24-Nov | Friday | 7:30pm | Regular Season | Miami Heat | CareOne | 4 | Marize Helmy, ESQ. (2 tix) + Dr. Joseph Siragua (2 tix) | Manna Law | IN SEASON TOURNAMENT - NATIONALLY TELEVISED GAME | $ 1,414.32 |
| 26-Nov | Sunday | 6:00pm | Regular Season | Phoenix Suns | | 4 | Hold for DES & Joseph | | | $ 1,131.58 |
| 28-Nov | Tuesday | 7:30pm | Regular Season | Charlotte Hornets | | 4 | Hold for DES | | IN SEASON TOURNAMENT | $ 780.50 |
| 30-Nov | Thursday | 7:30pm | Regular Season | Detroit Pistons | | 4 | Lizzy | | | $ 634.13 |
| 11-Dec | Monday | 7:30pm | Regular Season | Toronto Raptors | | 4 | Andrew Levy | | | $ 780.50 |
| 23-Dec | Saturday | 12:30pm | Regular Season | Milwaukee Bucks | CareOne | 4 | Emily Vazquez (4) | | | $ 1,131.58 |
| 25-Dec | Monday | 12:00pm | Regular Season | Milwaukee Bucks | | 4 | Sold by Joseph | | | $ 1,131.58 |
| 1-Jan | Monday | 3:00pm | Regular Season | Minnesota Timberwolves | | 4 | Sold by Joseph | | | |
| 3-Jan | Wednesday | 7:30pm | Regular Season | Chicago Bulls | | 4 | Sold by Joseph | | | $ 780.50 |
| 9-Jan | Tuesday | 7:30pm | Regular Season | Portland Trailblazers | | 4 | Sold by Joseph | | | $ 780.50 |
| 15-Jan | Monday | 3:00pm | Regular Season | Orlando Magic | | 4 | Sold by Joseph | | | $ 780.50 |
| 17-Jan | Wednesday | 7:30pm | Regular Season | Houston Rockets | CareOne | 4 | Ed Clark (1) & Hardel Bulgin (1): Tamara Johns (2) | | | $ 780.50 |
| 18-Jan | Thursday | 7:30pm | Regular Season | Washington Wizards | CareOne | 4 | Dina Frauwirth (2), Angelo (1), Dr. Wang (1) | Adult Care Advisors (Dina), Dementia Specialist Westwood (Angelo), Englewood Hospital (Wang) | | $ 780.50 |
| 20-Jan | Saturday | 7:30pm | Regular Season | Toronto Raptors | | 4 | Dr. Djebian (4) | | | $ 780.50 |
| 25-Jan | Thursday | 7:30pm | Regular Season | Denver Nuggets | CareOne | 4 | Lizzy Straus (1), Dr.Baker (3) | | Offered to Emily to give out* - sent email asking who the pysician is - possibly resever for the Bakers**** | $ 1,131.58 |
| 27-Jan | Saturday | 3:00pm | Regular Season | Miami Heat | | 4 | Sold by Joseph | | | $ 1,414.32 |
| 30-Jan | Tuesday | 7:30pm | Regular Season | Utah Jazz | | 4 | Nick Yagoda (2), Katie Havlicek (2) | | | $ 780.50 |
| 1-Feb | Thursday | 7:30pm | Regular Season | Indiana Pacers | | 4 | Joseph, Diana & Guests (2) | | | $ 780.50 |
| 3-Feb | Saturday | 8:30pm | Regular Season | LA Lakers | | 4 | Joseph, Charlie, Daniel & Moshael | | | $ 1,755.75 |
| 6-Feb | Tuesday | 7:30pm | Regular Season | Memphis Grizzlies | CareOne | 4 | Dr. Williams (2), Deb Hall (2) | Deb Hall (CareOne at Madison Ave Administrator) | | $ 975.50 |
| 8-Feb | Thursday | 7:30pm | Regular Season | Dallas Mavericks | | 4 | Dr.Baker (1), TBD (3) | | | $ 1,131.58 |
| 10-Feb | Saturday | 7:30pm | Regular Season | Indiana Pacers | | 4 | Reserved for DES/Joseph | | | $ 780.50 |
| 24-Feb | Saturday | 8:30pm | Regular Season | Boston Celtics | | 4 | Reserved for DES/Joseph | | | $ 1,414.32 |
| 26-Feb | Monday | 7:30pm | Regular Season | Detroit Pistons | | 4 | GIVE OUT | | **Added to the NBA schedule on 1/2/24 | |
| 27-Feb | Tuesday | 7:30pm | Regular Season | New Orleans Pelicans | | 4 | GIVE OUT | | | $ 975.50 |
| 29-Feb | Thursday | 7:30pm | Regular Season | Golden State Warriors | | 4 | Reserved for DES/Joseph | | | $ 1,755.75 |
| 5-Mar | Tuesday | 7:30pm | Regular Season | Atlanta Hawks | | 4 | | | | $ 780.50 |
| 8-Mar | Friday | 7:30pm | Regular Season | Orlando Magic | | 4 | GIVE OUT | | | $ 780.50 |
| 10-Mar | Sunday | 6:00pm | Regular Season | Philadelphia 76ers | | 4 | | | | $ 1,131.58 |
| 12-Mar | Tuesday | 7:30pm | Regular Season | Philadelphia 76ers | | 4 | | | | $ 1,131.58 |
| 23-Mar | Saturday | 1:00pm | Regular Season | Brooklyn Nets | | 4 | Hold for Emily physician | | | $ 1,131.58 |
| 25-Mar | Monday | 7:30pm | Regular Season | Detroit Pistons | | 4 | GIVE OUT | | | $ 780.50 |
| 31-Mar | Sunday | 7:00pm | Regular Season | Oklahoma City Thunder | | 4 | Reserved for DES/Joseph | | | $ 780.50 |
| 4-Apr | Thursday | 7:30pm | Regular Season | Sacramento Kings | | 4 | | | | $ 780.50 |
| 12-Apr | Friday | 7:30pm | Regular Season | Brooklyn Nets | | 4 | GIVE OUT | | | $ 1,131.58 |
| 14-Apr | Sunday | 1:00pm | Regular Season | Chicago Bulls | | 4 | | | | $ 975.50 |

**Knicks 2022-2023 Tickets**

| | Legend |
|---|---|
| Expected Premium Game/Good Opponent | |
| Friday Night, Saturday or Yuntif or Jewish Holiday | |
| Reserved for Daniel/Joseph | |
| Offered to Emily Vazquez to give away | |
| Sold on Stubhub or other Marketplace | |

| Date | Day | Time | Opponent | Company | Attendee | Guest (Company) | Notes | Face Value Per Ticket |
|---|---|---|---|---|---|---|---|---|
| 4-Oct | Tuesday | 7:00pm | Detroit Pistons | Care One | Dr. Gazala Dave +1 (Valley Hospital & Jennifer Matus (Valley Home Care) | Michelle Marececa (CareOne Liaison) | Preseason | |
| 7-Oct | Friday | 7:30pm | Indiana Pacers | Care One | Dr. Yair Kissin +1 & Case Manager + 1 | | Preseason | |
| 14-Oct | Friday | 7:30pm | Washington Wizards | | | | Preseason | |
| | | | | | | | | |
| 21-Oct | Friday | 7:30pm | Detroit Pistons | Care One | Lou Romano +1 (Homewell) & Jennifer Kelly + 1 (Homewell) | | | |
| 24-Oct | Monday | 7:30pm | Orlando Magic | Care One | Dr. Benjamin De Las Rosa +1    Dr. Kimir Elaj +1 | | | |
| 26-Oct | Wednesday | 7:30pm | Charlotte Hornets | Care One | Andre Bolukhas + 1 - Aaron Gagnon +1 | | | |
| 2-Nov | Wednesday | 7:30pm | Atlanta Hawks | Care One | Joseph +3 | | | |
| 5-Nov | Saturday | 7:30pm | Boston Celtics | Care One | Daniel and Joyce | | | |
| 11-Nov | Friday | 7:30pm | Detroit Pistons | Care One | Dr. Meet Parikh +1        Tarique Stewart  +1 | HUMC MD, Nyack Case Manger | Attribute to CareOne | |
| 13-Nov | Sunday | 12:00pm | Oklahoma City Thunder | Care One | Dr. Everman +3 | Holy Name Hospital | | |
| 25-Nov | Friday | 7:30pm | Portland Trail Blazers | Care One | Ricardo + 1 and Ryan + 1 | | | |
| 27-Nov | Sunday | 6:00pm | Memphis Grizzlies | | Lizzy, Michael & Jack + 1 | | | |
| 30-Nov | Wednesday | 7:30pm | Milwaukee Bucks | Care One & Partners | Nizar Kifaieh + 1 & Elliott Kohn + 1 | Hudson Regional & Ascend Hospice | | |
| 3-Dec | Saturday | 12:30pm | Dallas Mavericks | | | | | |
| 4-Dec | Sunday | 6:00pm | Cleveland Cavaliers | | Lizzy, Michael & Jack + 1 | | | |
| 7-Dec | Wednesday | 7:30pm | Atlanta Hawks | Care One | Becky + 1 & Howard + 1 | | | |
| 11-Dec | Sunday | 6:00pm | Sacramento Kings | Partners APS | Michelle Marececa | Michael Close (Bergen County Sheriff) + 2 | | |
| 20-Dec | Tuesday | 7:30pm | Golden State Warriors | Care One | Joseph Straus + 3 | | | |
| 21-Dec | Wednesday | 7:30pm | Toronto Raptors | Care One | Erika Braun + 3 | Administrator - Livingston ALF | | |
| 23-Dec | Friday | 7:30pm | Chicago Bulls | Care One | Kasey Siepe + 1 & Kareem Jacobsen + 1 | Administrator-Oradell & Food Service Director-Wellington | | |
| 25-Dec | Sunday | 12:00pm | Philadelphia 76ers | Care One | Joseph Straus + 3 | | | |
| 2-Jan | Monday | 3:00pm | Phoenix Suns | Care One | Dr. Jumana Chalabi + 1 & Dr. Mohammad Saeed + 1 | Morristown Medical Center | | |
| 4-Jan | Wednesday | 7:30pm | San Antonio Spurs | Care One | Dr. Baker + 1, Emily & Lizzy | | | |
| 9-Jan | Monday | 7:30pm | Milwaukee Bucks | Care One | Joseph Straus + 3 | | | |
| 11-Jan | Wednesday | 7:30pm | Indiana Pacers | Care One | Dr. Sheng Ye + 1 & Dr. Eddie Kassing Ho + 1 | | | |
| 16-Jan | Monday | 3:00pm | Toronto Raptors | Care One | David Baruch + 3 | | All 4 Tickets | |
| 18-Jan | Wednesday | 7:30pm | Washington Wizards | Care One | Dr. Amit Agarwal + 1, Dr Benita Prajbati & Dr. Sonit Chaddah | | | |
| 24-Jan | Tuesday | 7:30pm | Cleveland Cavaliers | Care One | Jason Grant + 1 & Kasey Siepe + 1 | CareOne Administrators | | |
| 31-Jan | Tuesday | 7:30pm | Los AngelesLakers | Care One | Daniel | | 4 REGULAR PLUS 2 FLOOR TICKETS NEXT TO LAKERS BENCH | |
| 2-Feb | Thursday | 7:30pm | Miami Heat | Care One | Myra Sanchez + 1 & Lisa Ross + 1 | | Ridgewood Ave DON | |
| 4-Feb | Saturday | 7:00pm | LA Clippers | Care One | Daniel + 3 | | | |
| 5-Feb | Sunday | 6:00pm | Philadelphia 76ers | Care One | Gabby Sultanik + 1 & Dr. Michele Morandi + 1 | | | |
| 11-Feb | Saturday | 7:30pm | Utah Jazz | | Joseph Strauss | | | |
| 13-Feb | Monday | 7:30pm | Brooklyn Nets | Care One | Dr. Shin + 3 | | | |
| 25-Feb | Saturday | 7:30pm | New Orleans Pelicans | Care One | Mickael Grasso + 1 & Gwen Crystal + 1 | | | |
| 27-Feb | Monday | 7:30pm | Boston Celtics | Ascend | Elliot Kohn + 1 & Paula Lapas + 1 | | | |
| 1-Mar | Wednesday | 7:30pm | Brooklyn Nets | Ascend | Elliot Kohn + 1 & Ravie Samlall + 1 | Guests were Dr. Pantagis & Dr. Agarwhal | | |

| 7-Mar | Tuesday | 7:30pm | Charlotte Hornets | Care One | Aly Mulryne + 1, Kayla Cornish & Michelle Macdonald | | | |
| 18-Mar | Saturday | 1:00p. | Denver Nuggets | Care One | Dr. Steve Schwartz + 3 | | All 4 Tickets | |
| 20-Mar | Monday | 7:30pm | Minnesota Timberwolves | Care One | Dr. Amit Tibb + 1 (Oradell) & Dr. Mohammed Saeed + 1 (Valley) | | | |
| 27-Mar | Monday | 7:30pm | Houston Rockets | Care One | Dr. Baker + 3 | | | |
| 29-Mar | Wednesday | 7:30pm | Miami Heat | Joseph Straus | | | | |
| 2-Apr | Sunday | 6:00pm | Washington Wizards | Care One | Lizzy & Jack + 2 | | All 4 Tickets | |
| 9-Apr | Sunday | 1:00pm | Indiana Pacers | Care One | Daniel + 3 | | All 4 Tickets | |
| | | | | | | | | |
| | | | | | | | | |

| Date | Day | Time | Game Type | Opponent | # of Tickets | Guest (Company) |
|------|-----|------|-----------|----------|--------------|-----------------|
| **KNICKS TICKETS** | | | | | | |
| 17-Jan | Wednesda | 7:30pm | Regular Season | Houston Rockets | 4 | Offered to Emily to give out |
| 18-Jan | Thursday | 7:30pm | Regular Season | Washington Wizards | 4 | Offered to Emily to give out |
| 25-Jan | Thursday | 7:30pm | Regular Season | Denver Nuggets | 4 | Offered to Emily to give out |

*EXHIBIT*

*D*

## LICENSE AGREEMENT

This LICENSE AGREEMENT ("License") entered into between the Department of Health, State of New Jersey (hereinafter referred to as the "State") with its principal offices at 369 S. Warren Street, Trenton, New Jersey 08608, as **Licensee** and Care One Management, LLC, a New Jersey limited liability company doing business in New Jersey with its principal offices located at 173 Bridge Plaza N, Fort Lee, New Jersey, 07024, as **Licensor** made as of April 16, 2020 (the "**Effective Date**").

## WITNESSETH

WHEREAS, Coronavirus disease 2019 ("COVID-19) is a contagious and, at times fatal, respiratory disease caused by the SARS-CoV-2 virus; and

WHEREAS, COVID-19 is responsible for the 2019 coronavirus outbreak which has now spread to the United States of America including but not limited to the State of New Jersey; and

WHEREAS, the spread of COVID-19 within New Jersey constitutes an imminent public health hazard that threatens and presently endangers the health, safety and welfare of the residents of the State; and

WHEREAS, the federal Center for Disease Control and Prevention ("CDC") has determined that older adults may be at a higher risk for severe health complications due to COVID-19; and

WHEREAS, the CDC has issued specific guidelines and advice related to COVID-19 for older adults in retirement communities and independent living facilities; and

WHEREAS, on March 9, 2020, New Jersey Governor Philip D. Murphy issued Executive Order No. 103 ("EO 103") proclaiming that a public health emergency and that a state of emergency exists in the State of New Jersey; and

WHEREAS, EO 103 recognizes that it is necessary and appropriate to take action against this public health hazard to protect and maintain, as well as, restore the health, safety and welfare of New Jersey residents and visitors pursuant to N.J.S.A. 26:13-1, et seq. and N.J.S.A. App. A:9-33 et seq., among other legal authorities; and

1

WHEREAS, the hospital facilities in New Jersey have an urgent need to be able to use as many of their existing in-patient hospital beds and medical resources for the treatment of patients with COVID-19 related illnesses; and

WHEREAS, in order to create additional capacity in our hospitals to treat COVID-19 related illnesses, the State has determined that there is a similarly urgent need to dedicate existing long-term care facilities for the sole purpose of housing and treating those long-term care residents of the State of New Jersey who are suffering from COVID-19 illnesses and require long-term care outside of a hospital setting; and

WHEREAS, due to the CDC-acknowledged vulnerability for older adults generally and those living within long-term care facilities in particular, the State has additionally determined there is an emergent need to ensure that long-term care residents who test positive for COVID-19 can continue to receive the required medical care at long-term care facilities while not placing other residents or staff at risk of infection; and

WHEREAS, it was necessary for the State to find suitable locations for the contemplated long-term care activities; and

WHEREAS, due to the location and existing treatment provided at the properties, the State has identified several long-term care facilities owned and operated by the Licensor as being suitable for the care and treatment of long-term care patients with COVID-19 illnesses; and

WHEREAS, pursuant to Executive Order 103 and N.J.S.A. 26:13-9, the Department of Health is authorized to procure by contract facilities necessary to respond to the public health emergency; and

WHEREAS, the property known as CareOne at Hanover Township, located at 101 Whippany Road, Whippany, New Jersey 07981, designated as Lot 6 in Block 5801 on the Tax Map of Hanover Township, as shown on **Exhibit 1-A** attached hereto, is a suitable location for dedication as a long-term care facility for patients suffering from COVID-19 who have been discharged from area hospitals; and

WHEREAS, the property known as CareOne at Wellington, located at 301 Union Street, Hackensack, New Jersey 07601, designated as Lot 30 in Block 321 on the Tax Map of the Borough of Hackensack, as shown on **Exhibit 1-B** attached hereto, is an additional suitable location for dedication as a long-term care facility for patients suffering from COVID-19 and require long-term care outside of a hospital setting; and

2

WHEREAS, collectively, the properties identified and depicted on **Exhibits 1-A and 1-B** shall be termed the "LICENSED PREMISES"; and

WHEREAS, Licensee may require access and use of one or more additional facilities Licensor operates for dedication as additional long-term care facilities for patients suffering from COVID-19 who have been discharged from area hospitals, depending on the duration and the extent of the COVID-19 public health emergency and state of emergency; and

WHEREAS, the property known as CareOne at Evesham, located at 873 Route 70 East, Marlton, New Jersey 08053, designated as Lot 3 in Block 16 on the Tax Map of the Borough of Marlton, as shown on **Exhibit 1-C** attached hereto, is an additional suitable location for dedication as a long-term care facility for patients suffering from COVID-19 and require long-term care outside of a hospital setting; and

WHEREAS, the property known as CareOne at New Milford, located at 800 River Road, New Milford, New Jersey 07646, designated as Lot 8 in Block 501 on the Tax Map of the Borough of New Milford, as shown on **Exhibit 1-D** attached hereto, is a suitable location for dedication as a long-term care facility for patients suffering from COVID-19 who have been discharged from area hospitals; and

WHEREAS, the property known as CareOne at Livingston, located at 68 Passaic Avenue, Livingston, New Jersey 07039, designated as Lot 32 in Block 3101 on the Tax Map of the Borough of Livingston, as shown on **Exhibit 1-E** attached hereto, is an additional suitable location for dedication as a long-term care facility for patients suffering from COVID-19 and require long-term care outside of a hospital setting; and

WHEREAS, collectively, the properties identified and depicted on **Exhibits 1-C through 1-E** shall be termed the "ADDITIONAL LICENSED PREMISES"; and

WHEREAS, the parties understand and agree that the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES are ready in their existing condition to undertake the treatment of long-term care patients who have tested positive for COVID-19 and, therefore, no construction, rehabilitation or similar work is required to convert the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES for the use under this License; and

WHERAS, to protect public health and safety and save lives, the State requires immediate, temporary access and use of the LICENSED PREMISES for the care, sheltering,

3

and treatment of patients who have tested positive for COVID-19 and require long-term care outside of a hospital setting; and

WHEREAS, based on the Governor's declared emergency under both the Emergency Health Powers Act (the "EHPA") N.J.S.A. 26:13-1 et seq., and the Disaster Control Act (the "DCA"), N.J.S.A. App.A:9-34 et seq., the Licensee requires the use of the LICENSED PREMISES until the contemplated long-term care activities under this License are complete; and

WHEREAS, depending upon the duration and extent of the COVID-19 public health emergency and state of emergency, the State may require access and use of one, two or all three ADDITIONAL LICENSED PREMISES for the care, sheltering, and treatment of patients who have tested positive for COVID-19 and require long-term care outside of a hospital setting; and

WHEREAS, on April 1, 2020, New Jersey Governor Philip D. Murphy issued Executive Order No. 112 ("EO 112") which further explained limitations on liability for health care facilities while the state of emergency continues; and

WHEREAS, Licensor is expected to and hereby directed to keep the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, open and available for Licensee for the duration of the term of this License as set forth in Paragraph 7 below; and

WHEREAS, it is the understanding of the parties that Licensor shall operate the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, in accordance with the terms of this License and in accordance with all New Jersey Department of Health requirements for COVID-19 and/or non-COVID-19 patient treatment; and

WHEREAS, it is the understanding of the parties that Licensor shall be solely responsible for providing the staff, supplies, and equipment necessary to operate the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, in accordance with this License; and

WHEREAS, pursuant to the EHPA, specifically N.J.S.A. 26:13-9, and the DCA, specifically N.J.S.A. App.A:9-34, the State is authorized to enter into this License.

4

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, and with the intent to be legally bound hereby, the parties agree as follows:

1. The above referenced recitals shall be incorporated in this License.

2. <u>Grant of License</u>.

    2.1    Licensor hereby licenses to Licensee the LICENSED PREMISES for the care, sheltering, and treatment of patients who have tested positive for COVID-19 and require long-term care outside of a hospital setting. This includes, but is not limited to, immediate and ongoing ingress and egress to both LICENSED PREMISES upon the execution of this License. Such access shall be continuous from the execution of this License and irrevocable absent written consent from both Licensor and Licensee in accordance with Paragraph 7.

    2.2    Licensee shall further have the right to license one, two or all three ADDITIONAL LICENSED PREMISES for the care, sheltering, and treatment of patients who have tested positive for COVID-19 and require long-term care outside of a hospital setting. Licensee shall provide Licensor three (3) days written notice of its determination that one, two or all three ADDITIONAL LICENSED PREMISES are required and identify which ADDITIONAL LICENSED PREMISES will be required. The other provisions of Paragraph 2.1 shall apply with equal force to the ADDITIONAL LICENSED PREMISES upon Licensee's determination that the ADDITIONAL LICENSES PREMISES' use is required.

    2.3    Licensor agrees that the control, use, operation, and maintenance of the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, shall be retained by the Licensor throughout the term of the License. Licensor agrees that such operation shall include, but is not limited to, provision of utilities, staff, supplies, equipment, waste management, and linens, all in accordance with accepted medical standards and, specifically, guidance from the New Jersey Department of Health and/or the CDC with respect to COVID-19 treatment.

2.4     To protect health and safety, Licensor agrees to move asymptomatic long-term care patients who currently reside in the LICENSED PREMISES (and ADDITIONAL LICENCED PREMISES, if necessary) and who are not persons under investigation or have not tested positive for COVID-19 to another of Licensor's long-term care patient facilities. The parties agree that such steps are required to ensure the sole use of the LICENSED PREMISES (and ADDITIONAL LICENSED PREMISES, if necessary) for the treatment of long-term care patients who have tested positive for and are suffering from COVID-19.

2.5     LICENSEE shall be restricted in its use of the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, solely for the purposes set forth in this License. In the event that LICENSEE requires any change in use of the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary,, LICENSEE shall submit in writing a request to LICENSOR who shall have a period of twenty-four (24) hours to grant such request, which will not be unreasonably withheld.

2.6     Licensee agrees that it shall not use the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, for any unlawful purpose or act and Licensee shall comply with all laws, rules, regulations, orders, ordinances, directions and requirements of any governmental authority or agency applicable to Licensee's use of and activities within the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary.

3.   Consideration.

3.1.     In consideration for the Licensee's right to access and the sole use of the LICENSED PREMISES for the activities described within, Licensee agrees to pay to Licensor a license fee of $1 for the term of the License. Should Licensee provide notice to Licensor that Licensee requires one, two or all three ADDITIONAL LICENSED PREMISES, Licensee agrees to pay to Licensor an additional license fee of $1 for the term of the License.

6

3.2.    Licensor shall be responsible for the reasonable cost of all utilities, staff, and supplies for the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, associated with the activities contemplated under the License during the term of the License. The parties understand that because all such costs are to protect public health and safety and to save lives, the costs may be eligible for FEMA reimbursement. Licensor shall invoice and submit any requested verifiable documentation of its costs associated with the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, on a monthly basis. In the event Licensor must procure additional supplies, equipment, and other services related to this License at the request of Licensee, such procurement must be done in accordance with 2 CFR Part 200 and the terms set forth in **Exhibit 2** of this License, as applicable.

3.3.    In the event of any dispute arising out of this License, Licensor must follow the requirements of the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq., to preserve and pursue its claim.

3.4.    In addition, Licensor may, as a parallel process and as a means of alternative dispute resolution, file a petition for a compensation award with an emergency compensation board composed of three persons appointed by the Governor pursuant to N.J.S.A. App.A:9-51(3). The emergency compensation board shall be constituted in the county in which the LICENSED PREMISES (or ADDITIONAL LICENSED PREMISES, if necessary) are located. A copy of said petition shall be served on the Attorney General. The board shall thereupon after reasonable and proper notice to the petitioner and the Attorney General, grant a hearing upon such petition and render a decision fixing the amount of the award. If the Licensor considers the matter to be resolved by the board's decision fixing the amount of compensation, it shall be the basis of a written settlement agreement and release of claim between the parties. If the Licensor does not consider the board's decision to resolve the matter of compensation, Licensor must comply with the New Jersey Contractual Liability Act to pursue its claim.

4.    Condition of the Licensed Premises. Licensee acknowledges and agrees that it has been afforded the opportunity to inspect the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES and that Licensee has satisfied itself that

the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES are suitable for the purposes described in this Agreement and that Licensee is not relying upon any statement or representation by Licensor unless such statement or representation is specifically embodied in this Agreement.

5. <u>End of Term</u>. At the end of the term as set forth in Paragraph 7, the sole use of the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, for care, sheltering, and treatment of patients who have tested positive for COVID-19 and require long-term care outside of a hospital setting shall end and the Licensor may resume treatment of all long-term care residents in accordance with Licensor's previously-established and licensed practices.

6. <u>Assignment.</u>  Licensee shall not assign, pledge, sublicense or transfer or encumber the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, without Licensor's prior written consent.

7. <u>Term</u>.  This License shall commence immediately upon the execution of this License and shall remain in full force and effect until, after consultation with relevant State and federal officials, the Licensee provides written notice that the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, if necessary, may resume the treatment of long-term care patients who have not tested positive for COVID-19 without danger to their health or safety.

8. <u>Relationship of the Parties</u>. No Landlord/Tenant relationship and no tenancy leasehold or estate rights on the part of the Licensee shall at any time be construed to exist or to have been created by this License.  Licensee hereby expressly acknowledges that it has no interest or estate in the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES other than the License set forth in this Agreement.

9. <u>Representations and Warranties</u>.

9.1. Licensor represents and warrants to Licensee that (i) the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES and Licensor are all part of the closely-held group of CareOne entities which all share common supermajority ownership; (ii) Licensor provides management services and exercises direction and control over the operations of the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES; (iii) since Licensor is the

management company for and shares joint common corporate ownership with the Owners of the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES, which holds good and marketable title, Licensor has authority to execute this License; (ii) to the best of its knowledge, there are no mortgages, easements, liens or any other encumbrances which would prevent the Licensor from using the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES for the intended purposes; (iii) it is organized and validly existing under the laws of the State of New Jersey; (iv) all action necessary to authorize the execution of this License has been taken by the Licensor; (v) the individual executing and delivering this License on behalf of Licensor has been authorized to do so, and such execution and delivery shall bind Licensor.

9.2.   Licensee represents and warrants to Licensor that (i) it is organized and validly existing under the laws of the State of New Jersey; (ii) all action necessary to authorize the execution of this License has been taken by the Licensee; (iii) the individual executing and delivering this License on behalf of Licensee has been authorized to do so, and such execution and delivery shall bind Licensee.

10. Merger; Amendment.  This License contains the entire agreement between the parties with respect to the subject matter hereof and any and all prior agreements between the parties with respect to the subject matter hereof are of no further force and effect and are deemed merged into this License.  This License may not be amended except in writing, signed by both parties thereto.

11. Governing law.  This License shall be governed by and construed in accordance with the laws of the State of New Jersey.

12. Notices.  All notices hereunder must be in writing and shall be deemed validly given if sent by certified mail, return receipt requested, addressed as follows (or any other address that the party to be notified may have designated to the sender by like notice:

LICENSEE
New Jersey Department of Health
369 S. Warren Street
Trenton, New Jersey 08608

9

LICENSOR
Care One Management, LLC
173 Bridge Plaza N
Fort Lee, New Jersey, 07024
Attn: Thomas McKinney, Esq.

13. Insurance and Immunity.

13.1.  Licensor and Licensee acknowledge that this License is being entered into as part of the efforts to address the State of Emergency and Public Health Emergency declared by New Jersey Governor Philip Murphy pursuant to Executive Order 103 on March 9, 2020.  Therefore, the contractor immunity provisions in the New Jersey Emergency Health Powers Act, N.J.S.A. 26:13-1, et seq., and specifically N.J.S.A. 26:13-19 (c),  shall be applied to the fullest extent permitted by law, which provides:

  (1)  A person or private entity who:

   (a) owns, manages or controls property that is used in connection with a public health emergency shall not be liable for an injury with respect to the property, unless the injury is a result of gross negligence or willful misconduct. The immunity applies whether the person or entity owning, managing or controlling the property permits the use of the property voluntarily, with or without compensation, or the State or another public entity exercises the condemnation powers in this or any other act with respect to the use of the property;

   (b) is acting in the performance of a contract with a public entity in connection with a public health emergency shall not be liable for an injury caused by the person or entity's negligence in the course of performing the contract, unless the injury is a result of gross negligence or willful misconduct; and

   (c) in connection with a public health emergency, renders assistance or advice to a public entity or public employee or donates goods and services shall not be liable for an injury arising out of the person or entity's assistance, advice or services, or associated with the donated goods, unless the injury is a result of gross negligence or willful misconduct.

(2) Paragraph 9 of Executive Order No. 112 dated April 1, 2020 is incorporated by reference, wherein the Governor ordered that any healthcare facility (such as the LICENSED PREMISES and ADDITIONAL LICENSED PREMISES) shall be immune from civil liability as described in more detail therein.

13.2.   Licensor further recognizes and understands that Licensee is a governmental entity and as such is subject to the provision of the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq. and the availability of appropriations. The Licensee as a governmental entity cannot agree to indemnify any third party for acts of negligence attributable to parties other than the entities, agents or employees of the State of New Jersey. The State of New Jersey does not carry public liability insurance, but the liability of the State and the obligation of the State to be responsible for tort claims is covered by the terms and provisions of the New Jersey Tort Claims Act. Claims against the State of New Jersey arising under this Agreement should be referred to Michael Smith Director of Risk Management, Department of the State Treasury, P. O. Box 620, Trenton, New Jersey 08625.

14.   <u>Attached Schedules and Exhibits</u>. All of the terms, covenants and conditions of the following schedules are attached to this License and incorporated herein by reference and shall be deemed a part of this License as though fully set forth in the body of this License:

Schedule A – State Mandatory Provisions;
Schedule B – Disclosure of Investment Provisions in Iran;
Schedule C – Affirmative Action Affidavit (AA302);
Schedule D – Disclosure Statement;
Exhibit 1 – Tax Maps; and
Exhibit 2 – Federally Funded Contracts Rider.

Licensor has fourteen (14) business days after executing this License to complete Schedules B, C, and D, and deliver the completed schedules to the Licensee.

16.   <u>Enforceability and Counterparts</u>.   This License may be executed in several counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. If any provision of this License shall be

11

invalid or unenforceable, the remainder of this License shall remain in full effect. Executed copies hereof may be delivered by facsimile or by email in a PDF attachment, and upon receipt, shall be deemed originals and binding upon the parties hereto. Without limiting or otherwise affecting the validity of executed copies hereof that have been delivered by facsimile or by email in a PDF attachment, the parties shall use diligent efforts to deliver originals as promptly as possible after execution.

[SIGNATURES CONTAINED ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the parties hereto, duly authorized, have executed this Agreement as of the date and year written above.

LICENSOR

CARE ONE MANAGEMENT, LLC

By: _____

    Name:
    Title:

LICENSEE

NEW JERSEY DEPARTMENT OF HEALTH

By:_____

    Name:  Eric Anderson
    Title:   Director, Management & Administration/CFO

APPROVED AS TO FORM ONLY:
GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _____

    Kavin K. Mistry
    Assistant Attorney General

13

IN WITNESS WHEREOF, the parties hereto, duly authorized, have executed this Agreement as of the date and year written above.

LICENSOR

CARE ONE MANAGEMENT, LLC

By: _____
        Name:
        Title:

LICENSEE

NEW JERSEY DEPARTMENT OF HEALTH

By: _____
        Name:  Eric Anderson
        Title:    Director, Management & Administration/CFO

APPROVED AS TO FORM ONLY:
GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _____
        Kavin K. Mistry
        Assistant Attorney General

13

IN WITNESS WHEREOF, the parties hereto, duly authorized, have executed this Agreement as of the date and year written above.

LICENSOR

CARE ONE MANAGEMENT, LLC

By: _____
     Name:
     Title:

LICENSEE

NEW JERSEY DEPARTMENT OF HEALTH

By:_____
     Name:  Eric Anderson
     Title:   Director, Management & Administration/CFO

APPROVED AS TO FORM ONLY:
GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _____
    Kavin K. Mistry
    Assistant Attorney General

13

*EXHIBIT*

*E*

5:20    ..ıll 5G⚡ 🔋

< All Inboxes    **2 Messages**    ∧ ∨

**Elizabeth Straus**    3/12/24
To: Daddy >

# Care One Performance Highlights

📄 **Care One September 2023-March 2024.docx**
26 KB    ⬇

↩

Found in iCloud Inbox    🗂

**DS**    **Daniel Straus**    3/13/24
To: Elizabeth Straus >

This is incredible. Thank you for sharing this with me. Thanks to you CareOne has turned the corner and has made enormous progress.

Get Outlook for iOS

## Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and



*EXHIBIT*

*F*

deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone (973) 239-5700, and destroy the original message. Thank you

From: Linda Martin <LMartin@care-one.com>

Sent: Wednesday, April 1, 2020 4:29 PM

To: 'Maziarz, Marcela' <Marcela.Maziarz@doh.nj.gov>; Kelly, Daniel <Dan.Kelly@nj.gov>; Ford, Robin <Robin.Ford@doh.nj.gov>; Persichilli, Judith M <Judith.Persichilli@doh.nj.gov>; Martinez-Mejia, Andrea <Andrea.Martinez-Mejia@doh.nj.gov>; Sean Kilcomons <Sean.Kilcomons@njsp.org>; Anderson, Eric <Eric.Anderson@doh.nj.gov>; Christensen, Maria <Maria.Christensen@doh.nj.gov>; DeVitto, Jean <Jean.DeVitto@doh.nj.gov>; Lindo, Joy L <Joy.Lindo@doh.nj.gov>

Cc: Thomas P. Scrivo <tscrivo@oslaw.com>; Thomas McKinney <TMcKinney@care-one.com>; Lizzy Straus <LStraus@care-one.com>; Alberto Lugo <alugo@care-one.com>; Toya Casper <TCasper@care-one.com>

Subject: RE: COVID-Capable Care

Dear Marcela,

Thank you for the quick response. We believe a designation and contract are appropriate especially because we have identified at least 5 CareOne facilities that can be utilized Statewide. These include Hanover Township (Morris County), New Milford (Bergen County), Oradell (Bergen County), Livingston (Essex County) and Evesham (Burlington Count). Please see attached for reference. These facilities, in total, can make available approximately the following number of beds for COVID positive patients:

(1)Hanover: 94 beds

(2)New Milford: 45 beds (up to 90)

(3)Oradell: 34 beds (up to 68)

(4)Livingston: 40 beds; and

(5)Evesham: 32 beds (up to 64 beds)

Based on the level of services that are needed to be provided to these patients, including potential intensive respiratory (non-ventilator) level of care, which CareOne is able to provide, CareOne's costs will far exceed our normal costs of care. Therefore, our typical billing rates will not be able to meet the additional outlay of costs necessary to remain operational, including maintaining the facilities, additional PPE and equipment costs, and meeting payroll for the increased staffing ratios needed for this higher level of care.

Recognizing the complexity and the emergent need, we believe it would be most efficient to have a Statewide contract for CareOne to allow for flexibility, and provide CareOne with a per patient, per day rate for the extraordinary costs of caring for these patients. We estimate this cost would be $4,800.00 per patient, per day for Intensity Respiratory Care patients (high-flow piped in oxygen/suction capability); and $3,200.00 per patient, per day for non-Intensive Respiratory Care above typical billing rates. This is reasonable based on the following: Additional/enhanced PPE costs, additional payroll, building/engineering controls, building maintenance and cleaning, and specialized equipment (including automated pharmacy dispensing units).

Under this structure, the State would provide reimbursement for these additional, extraordinary costs of care up front, and CareOne would continue to bill carriers and other payors, and then based on carrier reimbursement and federal reimbursement to the State, CareOne would be willing to reconcile any amounts paid after the emergency is resolved. We have seen this structure applied for other State emergency contracts and based on the timing and CareOne's

with pending positive results) to CareOne at New Milford, effective upon DOH approval. This proposal differs from Hanover Township in that we would only physically accept and transfer patients from COVID-naïve units and only upon the recommendation of the attending physician in consultation with our infection disease experts. This will result a much smaller number of displaced residents. Second, we would immediately begin admitting patients both newly diagnosed with COVID-19 positive and those pending confirmation. Hospitals are reporting to us that patients with pending results are in limbo with most long term care facilities unwilling to even consider their referrals.

The Hanover Township experience is teaching us what we intuitively understood, which is that patient clinical protocols are simpler when all patients are presumed to be positive, regardless of actual laboratory confirmation. It is also easier for staff to comply with strict PPE protocols when they are uniform throughout the facility. Staff have reported that removing the uncertainty of which patients need what level of isolation is one of the most challenging part of treating these very sick patients. Removing the unknown allows staff to focus on the critical task of caring for these residents who are sickest of the sick, and the frailest of the frail.

The current census of CareOne at New Milford is 187. This proposal would create immediate capacity to relieve the urgent needs of our acute care hospitals in Bergen County, especially Holy Name Hospital which has seen a disproportionately high number of cases. As short-term patients are successfully discharged home, additional capacity will be created.

We have engaged the services of an Industrial Hygienist to install building engineering controls such as isolation enclosures to create negative pressure ventilation. In addition we intend to operate an automated pharmacy dispensing system to decrease need for pharmacy deliveries and lessen the burdens on the nursing staff. There will be additional use of some PPE such as N95 masks, although we note that universal application of enhanced PPE tends to conserve some items such as simple masks. Given the benefits to the hospital systems and the North Jersey community at large, we would seek reimbursement for the extraordinary costs associated with being fully COVID-capable.

If you need any additional information, please reach out any time.

Kindest regards,

Linda

Linda Martin, JD

Chief Compliance Officer

Phone: 201-242-4914

Cell: 201-815-1563

Toll Free Compliance Hotline: 1-800-362-1059

CONFIDENTIALITY NOTE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and destroy all copies of the original message. Thank you.

Confidentiality Notice: This email and its attachments – may include advisory consultative and/or deliberative material and, as such, would be privileged and/or confidential and not a public document. Any information in this e-mail identifying a client of the Department of Health or including protected health information is confidential. If you received this e-mail in error, you are not authorized to review, transmit, convert to hard copy, copy, or in any way further use or disseminate this e-mail or any attachments to it. You must immediately notify the sender and delete this message. If the email you received in error contained client or protected health information, you must also notify the Data Privacy Officer immediately at privacy.officer@doh.nj.gov and confirm in writing that you deleted the email(s)/attachment(s) and that you did not/will not further use or disclose the information contained in the email.

CONFIDENTIALITY NOTE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and destroy all copies of the original message. Thank you.

**EXHIBIT**

**G**



**8:19**

**‹** **61**    **D**    ▢

Daddy ›

> I'm sending you yad Eliezer now

Thu, Apr 11 at 6:32 PM

I understand that you sent Gina to wait for a check for Dr Howard today. The head of AP was told this check was an emergency and was approved by Emily. This is not appropriate and is contrary to the policy and process that was put in place by me to make sure that the abuses of the past do not happen again. I don't ever want this to happen again. This is not an emergency. It does not warrant circumventing the rules. I don't ever want you to do this again.

> What? Emily said that he would be paid. We told him bc he needed to make payrolll. I have been asking Emily for a week to make sure he got paid and she said would not be an issue. He specifically said he would not come on board bc of what happened last time where he wasn't paid for 18 months. I assured him this would not be an issue this time.

Dr Howard was given a sweetheart deal at your insistence and my reservation. Please show the value that he has brought in terms of actual data of increased patients.

+    iMessage    🎤

8:19

‹ 61

D

Daddy ›

of increased patients.

Happy to show you. Look at the Teaneck and Ridgewood numbers

This is 18 months.

This is 11 days

Show me Teaneck before and after Howard

He is resigning. Don't worry. We can cancel checks and he will re route not an issue. I don't need to deal with this. Never did. I didn't do anything inappropriate and I'll show you my messages with Emily about that.

Show me Ridgewood

No problem. I don't need him. And will not do this with him. I will make a chart of PCC numbers and show you. And new physicians etc. happy to make whatever report you would like

Ok whatever you say. I'll ask AP to cancel check and you or Emily can let him know

That's fine. No problem. He will be set up in 5 other companies tomorrow. The pulmonary and cardiologist and Klein and Levine that just ageeed to

iMessage

*EXHIBIT*

*H*



May 10, 2024

**VIA EMAIL & FEDEX**
Dr. Brandon Howard
20 Prospect Ave.
Hackensack, New Jersey 07601

Re:   Termination of Senior Medical Director Agreements with Care One at
Birchwood, LLC d/b/a Care One at the Teaneck and Related Agreements

Dear Dr. Howard:

Pursuant to the Senior Medical Director Agreement between you and Care One at Birchwood, LLC d/b/a Care One at the Teaneck ("Care One"), dated as of March 1, 2024, and all related agreements between you and Care One or its affiliates ("Medical Director Agreements"), Care One is hereby providing you with written notice of termination of your services. Although Care One has reason to believe it may terminate the agreements for cause effective immediately, Care One is hereby providing you with thirty-days' notice pursuant to Section 9.1.2 of the Medical Director Agreements. Accordingly, the termination is effective June 9, 2024. Please be advised that effective *immediately* Care One hereby revokes your credentialed status at all facilities.

Please be aware that this termination does not affect any of your outstanding obligations under your Medical Director Agreements with Care One, including concerning disclosure of Confidential Information and Records, for the periods and subject to the terms set forth therein.

Sincerely,

Eric D. Herschmann
General Counsel

*EXHIBIT*

*I*



*EXHIBIT*

*J*



# RESEARCH

Ignatius Licato conducted preliminary research prior to the surveillance to ascertain the identities of the subjects, along with their respective addresses and vehicles. The information gathered by Mr. Licato is detailed below.

## SUBJECT 1 OF 4: ELIZABETH "LIZZY" STRAUS

| | |
|---|---|
| Address: | 351 Lewelen Circle, Englewood, NJ 07631 |
| Subject's Spouse: | Michael Greenspan (drives old Navy Porshe Cayenne) |
| Subject's Children: | Male (14-year-old), two other male children (ages unknown) and female (1-year-old) |
| Subject's Staff: | 1) a nanny for Gwendolyn, 2) a cleaning lady, 3) a housekeeper, 4) Michael's children's nanny, and 5) A driver (Tony, see subject 2). |
| Subject's Vehicles: | Black Range Rover, NJ License Plate #E67UWF<br>Midnight Sky (Very Dark Blue/Black) Jeep Grand Wagoneer, NY License Plate #LEU5735 |

## SUBJECT 2 OF 4: AUGUSTO "TONY" URENA

| | |
|---|---|
| Address: | 688 Salem Street, Teaneck, NJ 07666 |

## SUBJECT 3 OF 4: DR. BRANDON TREVOR HOWARD

| | |
|---|---|
| Address: | 47 Condit Road, Mountain Lakes, NJ 07046 |
| Vehicle: | GMC Pickup, NJ License Plate #Z26SDT |

## SUBJECT 4 OF 4: ANDROSKY "ALBERTO" LUGO

| | |
|---|---|
| Address: | 31 Pondfield Road, W. Yonkers, NY 10708 |
| Vehicle: | BMW, NY License Plate #JFY5652 |

# TYPE OF SURVEILLANCE

The surveillance was carried out both from vehicles and on foot. The investigators did not use any static cameras. All images were captured using cameras on discreet equipment.



# DETAILS OF SURVEILLANCE

## November 6, 2024

| | |
|---|---|
| 8:00 AM | Surveillance was first initiated at Mrs. Straus's residence. |

5:00 PM     Instructions were received to proceed to 360 Essex Street, Hackensack, NJ 07601. Upon arrival at the new location, we were informed that the subject, Elizabeth "Lizzy" Straus, was inside Bite Food & Coffee Co. with another individual, identified as Androsky "Alberto" Lugo. Investigators established a surveillance position nearby to monitor their departure.

6:17 PM     Elizabeth "Lizzy" Straus and Dr. Brandon Trevor Howard were observed walking back to Dr. Brandon Trevor Howard's vehicle, a black GMC pickup with NJ license plate #Z26SDT. Both subjects entered the vehicle and departed the area, prompting us to pursue.

7:00 PM     The vehicle was pursued to the corner of First Ave and Broadway in Denville, NJ. Dr. Brandon Trevor Howard exited the vehicle while Elizabeth "Lizzy" Straus remained seated in the passenger seat. The male subject was observed entering Denville Dairy at 34A Broadway, Denville, NJ 07834. After a short time, he exited the store, returned to the vehicle, and departed the area.

7:30 PM     The vehicle was pursued to Sonesta ES Suites located at 3 Gatehall Drive, Parsippany-Troy Hills, NJ 07054. The subjects remained inside the vehicle briefly before exiting and entering the facility through a side entrance.

7:57 PM     The known Jeep Grand Wagoneer with NY license plate #LEU5735 was observed arriving at the hotel and parking near the entrance where the subjects had entered.

8:04 PM     Elizabeth "Lizzy" Straus and Dr. Brandon Trevor Howard were documented exiting the hotel. The subject was observed saying goodbye to the male subject before entering.

2:00 AM     Surveillance ends.

Videos visit this link:

https://sageintell.sharepoint.com/:f:/s/CaseFiles/Es1UCldSrDhOujYUxoYJzJ4BRJtqZmfmXcDbJYRys9DZ_w?e=7aOO70

See images in the following pages:

SAGE Intelligence
knowing is everything·





SAGE Intelligence
knowing is everything





## December 23, 2024

8:00 AM      Investigators set up surveillance at the Hilton Hotel located at 2 Meadowlands Plaza, East Rutherford, New Jersey 07073.

8:30 AM      Elizabeth Straus, along with Androsky Alberto Lugo, exited elevators in the Hotel lobby, at which time Mr. Lugo escorted her to her vehicle, NJ license plate #E67UWF Black Rover, driven by Mr. Urena.

     Mr. Lugo then went into the Starbucks located in the hotel lobby, bought a coffee and brought it to Mrs. Straus, located in the back seat. Mr. Lugo then remained in the Hotel lobby while Mr. Urena and Mrs. Straus left the Hilton.

1:16 PM      Mr. Lugo left the Hilton with two suitcases in hand.

     Investigators followed the Black Range Rover to the Ritz Carlton 1700 Tysons Boulevard, McLean, Virginia 22102.

     At this time, Mrs. Straus exited the Range Rover and went to ENTSYE restaurant located at the Ritz Carlton.

     Mrs. Straus met up with four male subjects.

     At one point, 3 of the males left Mrs. Straus's table and had a meeting of their own, leaving only one male with Mrs. Straus.

     After approximately an hour and a half, the three males rejoined Mrs. Strauss and the other male at her table.

3:03 PM      The driver of Maryland registration 2BW1382 left the table to retrieve something from his vehicle and came back to the table. He again left at 3:16 PM.

3:20 PM      One of the other males left the table and went into the elevators.

4:00 PM      Another male left the table, entered Virginia registration UJP4928, and left the area.

5:30 PM      The last male left the table along with Mrs. Straus, exiting the restaurant together and standing in the Hotel lobby area investigator overheard her say, "it was nice meeting you. I can't wait to work with all of you." The male responds, "yes very nice meeting you as well, and I will be in touch very soon after the holidays"

     Mrs. Straus then excused herself and went into the ladies' room. The male at this point, left and was followed through the Mall connected to the Ritz Carlton to his vehicle, Virginia registration TXP1332.



10:00 PM      The Range Rover arrived at the Englewood, NJ residence and dropped off Elizabeth Straus.

12:00 AM      Surveillance terminated.

See videos at the following link:

https://sageintell.sharepoint.com/:f:/s/CaseFiles/Es1UCldSrDhOujYUxoYJzJ4BRJtqZmfmXcDb JYRys9DZ_w?e=U9cEKu

See images on the following pages:







SAGE Intelligence
knowing is everything



*EXHIBIT*

*K*

Anthony N. Gaeta, Esq. - Atty. ID: 02214-2001
William A. Friedman, Esq. - Atty. ID: 03472-2008
**GAETA & FRIEDMAN, LLC**
The Meadows Office Complex
301 Route 17 North, Suite 505
Rutherford, New Jersey 07070
Phone: (201) 939-3304
Fax:     (201) 939-3349
*Attorneys for Plaintiff, Elizabeth Straus*

|  |  |
|---|---|
| ELIZABETH STRAUS,<br><br>    Plaintiff,<br><br>v.<br><br>JOYCE G. STRAUS, *Individually and as Co-Trustee*, MOSHAEL J. STRAUS, *Individually and as Co-Trustee,* DES 2007 Family Trust II dated December 19, 2007, DES 2009 Family Trust dated October 26, 2009, DES 2010 Family Trust dated October 13, 2010, DES 2016 Family Trust dated October 14, 2016, Trust f/b/o ESS dated April 27, 2017, DES-ESS 2019 Receptacle Trust dated April 16, 2019, JOHN DOES/TRUSTEES 1-10, and TRUSTS 1-10,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION – GENERAL EQUITY<br>BERGEN COUNTY<br><br>Docket No.: BER-<br><br><u>**Civil Action**</u><br><br>**CERTIFICATION OF<br>AUGUSTO "TONY" URENA** |

   I, Augusto "Tony" Urena, being of full age hereby certify on my personal knowledge as follows:

   1.  I am a retired Police Officer, formerly of the New York Police Department ("N.Y.P.D.").  I make this certification in support of the Plaintiff's application for interim relief.

   2.  After the Plaintiff's father insisted that she relocate from New York City to Englewood, New Jersey, I was retained to provide transportation and security services for the Plaintiff's family.

3.      I have been employed in this capacity for 14 months at a <u>net</u> salary of $2,500.00 per week plus a health insurance benefit of $500 per month.  My payments were a combination of $1,500.00 in <u>gross</u> pay by way of a paycheck from Paychex which netted me approximately $1,150.00.  The balance of my weekly net pay and monthly health insurance benefit were made by direct payments from Elizabeth.

4.      One of my job responsibilities was picking up the Plaintiff's son, driving him into New York City, escorting him to school, and driving him home after school. I also escort and provide security to the Plaintiff when she attends public and private events.

5.      Recently, as I was leaving my house in Teaneck to pick up the Plaintiff for a private event, I was accosted by three individuals who demanded that I speak with them.  When I asked them who they were, they responded that the worked for the "Straus Trust."

6.      These men, who I did not know, threatened that if I declined to speak with them, I would be fired. I refused to speak with them and left to pick up the Plaintiff at her home in Englewood.

7.      Not long after this disturbing encounter, I received a set of e-mails from Becky McGinnis, who I understood to by the Straus Family's controller, advising me that I would no longer receive my salary via Paychex – which had always been the case – and that I should "reach out to [the Plaintiff] to make alternative arrangements." **See** **<u>Exhibit A, True Copy of the Text Messages from Becky McGinnis, CPA dated October 11, 2024 and October 12, 2024</u>**.

8.      Because the Plaintiff's father has insisted that the Plaintiff be entirely dependent on either him or the various Trusts he has established for her benefit, the Plaintiff has been unable to pay me directly, which is precisely what the Plaintiff's father and Ms. McGinnis knew would occur.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: October 18, 2024

**AUGUSTO URENA, N.Y.P.D. (Ret.)**